IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

JONES DIGITAL, LLC                                              PLAINTIFF

VS.                          NO. 2:23-cv-220-LPR

ARKANSAS COUNTY, ARKANSAS;
THOMAS BEST, in his official capacity
as Arkansas County Judge; JOHNNY
CHEEK, in his official capacity as
Arkansas County Sheriff; TIM BLAIR,
in his official capacity as
Arkansas County Prosecuting Attorney           DEFENDANTS

REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

I.      INTRODUCTION

The Court should grant plaintiff Jones Digital, LLC's ("Jones Digital") motion

for preliminary injunction. Dkt. No. 2. Jones Digital has established all four of the

*Dataphase* factors that the Court must consider in deciding this motion. *Dataphase*

*Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc).

Conversely, the response of defendants Arkansas County, Arkansas, Thomas Best,

Johnny Cheek, and Tim Blair ("Defendants") rests solely on four faulty factual and

legal premises.

*First*, to contest Jones Digital's irreparable harm, Defendants claim certain

photographs Defendants previously submitted prove that Jones Digital has begun

"no construction activity at all thus far; just pods presumably containing electronic

equipment placed on the eventual building site." Dkt. No. 17, at 4. As will be shown

below, Defendants own submissions demonstrate this to be incorrect.

*Second*, Defendants argue that Act 851 does not apply. Defendants claim that the October Ordinance somehow "relates back" to the date the July Ordinance was enacted; and Defendants claim that Act 851 "in reality only applies to residential household data mining centers," while failing to address the plain text of Act 851 that is directly inconsistent with that proposition.

*Third*, Defendants claim the only irreparable harm that threatens Jones Digital is "lost income" or "lost potential income," while ignoring the looming prospect of civil and criminal enforcement, as well as binding Eighth Circuit law holding that deprivation of a business's goodwill suffices as irreparable harm to warrant a preliminary injunction. *See Rogers Group v. City of Fayetteville*, 629 F.3d 784, 790 (8th Cir. 2010).

*Fourth*, Defendants "deny that there's any evidence that justifies an order restraining defendants from retaliating, as retaliation has never been mentioned or threatened in any known way." This ignores the efforts to prevent Jones Digital from commencing business operations, including by instigating third-party investigations based on false information and apparent trespasses by members of the general public on Jones Digital's parcel on November 9, 2023.

Each of Defendants' arguments fails. Defendants' bold assertion that Jones Digital "has not commenced any building whatsoever" is baseless. Dkt. No. 17, at 11. In fact, what is shown in Defendants' photographs *are* the data center structures that Jones Digital has constructed. And while a few minor steps still remain before Jones Digital's project becomes operational, those should be completed by November

2

17, 2023. *See* Exhibit 1, Declaration of Cliff Evans, at ¶ 5 ("Evans Declaration"). In short, Defendants' opposition to Jones Digital's motion on the premise that construction has not begun lacks any factual basis.

Likewise, Defendants' incomplete construction of Act 851 ignores the plain text of the statutes in question. Defendants ignore binding Arkansas law that provides unequivocally that local legislative enactments are subordinate to the general law as enacted by the Arkansas General Assembly. By its plain text, Act 851 clearly applies to "the data centers industry" and expressly defines "digital asset mining business" as separate and distinct from "home digital asset mining." Ark. Code Ann. §§ 14-1-602; 14-1-603(5) and (6). By its plain text, Act 851's specific intent is "to protect data asset miners from discriminatory industry specific regulations and taxes." Ark. Code Ann. § 14-1-602(b)(2). Act 851 clearly supersedes the October Ordinance because the latter is directly inconsistent with Act 851.

Defendants' claim that Jones Digital invokes only lost income as the sole basis to find irreparable harm is merely a straw man argument. First, the October Ordinance threatens Jones Digital and related persons with "exposure to civil and criminal penalties once operations commence." Dkt. No. 7. Second, as further expounded in the declaration of Qimin "Jimmy" Chen ("Chen Declaration"), attached hereto as Exhibit 2, deprivation of Jones Digital's right to operate will disrupt and permanently threaten Jones Digital's goodwill, including ongoing business relationships with third parties.

3014641-v1

Finally, despite the Court's warning against enforcement efforts prior to the preliminary injunction hearing,[1] Defendants, in coordination with third-parties, have contrived efforts to prevent Jones Digital from operating its lawful business.[2]

Thus, Jones Digital's motion should be granted. The Court should reject Defendants' efforts to circumvent validly-enacted Arkansas general law. The Court should enter a preliminary injunction against enforcement of the October Ordinance as a facial violation of Act 851 of 2023. And the Court should restrain Defendants, and anyone acting in coordination with them, from taking any further step to retaliate against Jones Digital, or any related persons, for bringing this action.

## II.    ARGUMENT

### A.    Jones Digital has established substantial risk of irreparable harm.

*1)    Jones Digital's site will likely be operational by November 17, 2023.*

Defendants falsely contend that Jones Digital has engaged in "no construction activity at all thus far" and "has not commenced any building whatsoever at present." But Defendants' own submitted photographs clearly show completion of Jones Digital's construction project is imminent. *See* Dkt. No. 13-1. Indeed, Defendants' submissions show the very structures that will house Jones Digital's digital asset mining equipment as part of its operations.

---

[1] *See* Dkt. No. 7 ("[S]hould the Defendants or anyone else bring an enforcement action (or any other action under the Ordinance) against the Plaintiff before the Court has ruled on the Plaintiff's relief, the parties are directed to immediately apprise the Court of such fact.").

[2] As outlined below, Jones Digital intends to introduce evidence that Arkansas County Judge Best has acted in coordination with retaliatory efforts culminating in the physical trespass on Jones Digital's parcel by several members of the general public without any lawful basis on November 9, 2023.

Those photographs corroborate—if inadvertently—the Evans Declaration. As Mr. Evans attests, Jones Digital has "nearly completed construction." Ex. 1, at ¶ 4. In fact, "actual operations—at least on a moderate level—can commence by **November 17, 2023**." *Id.*, at ¶ 5 (emphasis added). Part of Defendants' confusion might have arisen because the July Ordinance only requires the mechanical equipment to be screened on all sides; whereas the October Ordinance requires "sound-attenuating walls on all sides and a roof." Dkt. No. 1, at 45. Jones Digital need not construct walls and a roof to be in full compliance with the July Ordinance. And Jones Digital will likely be able to operate as soon as Friday.

2)     *Jones Digital has shown it has no adequate remedy at law.*

Jones Digital expects to be operational by Friday. Still, Defendants argue that Jones Digital does not present a "real threat of irreparable harm" because damages would be an adequate remedy. This is wrong for three separate reasons.

*First*, Defendants completely ignore the criminal and civil penalties contained in the October Ordinance. The October Ordinance creates a penalty for an unclassified misdemeanor for each day that the site operates in violation of its terms. The October Ordinance threatens criminal sanctions against "the person operating the equipment or creating the noise;" "the person who employs the person operating the equipment or creating the noise at the time of the violation;" and also "the person who owns or rents the property where the violation occurs." Dkt. No. 1, at 49. "The threat of criminal prosecution is more than sufficient to show a threat of irreparable harm not compensable by money damages." *MKB Mgmt. Corp. v.*

*Burdick*, 954 F.Supp.2d 900, 912 (D.N.D. 2013); *see also Wooley v. Maynard*, 430 U.S. 705, 712 (1977).

*Second*, the *Rogers Group* case is squarely on point and should guide the Court's determination of the question of irreparable harm. 629 F.3d at 790. As evidenced by the Chen Declaration, "the October Ordinance will prevent Jones Digital from being able to operate and therefore disrupts its ability to service its customers." Ex. 2, Chen Declaration, at ¶ 6. That disruption will cause Jones Digital to "suffer economically including losing what it has already invested, as well as losses to its reputation and goodwill." *Id.*, at ¶ 7. As the Chen Declaration asserts, "if Jones Digital is unable to perform under its agreements, then its customers will leave and [Chen] would not expect them to return at future sites, and potential future customers may be chilled from engaging with Jones Digital in expanding its business operations." *Id.*, at ¶ 8. "Without the ability to expand its operations, Jones Digital cannot bid on larger service contracts or accept projects on short notice." *Id.*, at ¶ 9. "The ability to grow and accommodate its current and future customers' needs is critical to Jones Digital's commercial viability." *Id.*, at ¶ 10. And "[e]ven if Jones Digital ultimately prevails in this case, any customers Jones Digital loses—if and when the October Ordinance goes into effect—would be unlikely to return once the Ordinance's restrictions are lifted." *Id.*, at ¶ 11.

Each of these propositions dovetails exactly with the Eighth Circuit's rationales in affirming the preliminary injunction in *Rogers Group*. There, a rock quarry's representative "testified that the Ordinance would prevent the Quarry

6

from expanding." *Rogers Group*, 629 F.3d at 790. And that "[w]ithout the ability to expand its operations," the quarry "cannot bid on larger projects or accept projects on short notice." The Chen Declaration demonstrates clearly that irreparable harm would arise from enforcement or threatened enforcement of the October Ordinance.

And while *Rogers Group* is on all-fours with this case, the case relied on by Defendants is markedly off-point. *See generally Adam-Mellang v. Apartment Search, Inc.*, 96 F.3d 297, 300 (8th Cir. 1996). *Adam-Mellang* arose as an employment discrimination and wrongful discharge case, where damages offered an adequate remedy at law. As the Eighth Circuit aptly put it, "the issue, then, is whether plaintiff's removal from a board of directors is irreparable injury ***in an employment discrimination or retaliation lawsuit***." 86 F.3d at 300 (emphasis added). The Eighth Circuit held "a temporary loss of income is not enough to establish irreparable harm." *Id.* The Eighth Circuit reasoned that the plaintiff had no "right to remain on the Apartment Search Board of Directors." *Id.* Nor did the plaintiff "explain[] how removal from the Board of Directors will irreparably injure her position as a minority shareholder." *Id.*

*Adam-Mellang* is not this case. Here, Jones Digital has a right to conduct lawful business operations on its property, both at common law and by virtue of the specific statutory provisions of Act 851 of 2023. The October Ordinance interferes with and disrupts Jones Digital's exercise of that right in direct inconsistency with Arkansas general law. Finally, to the extent the Court perceives any tension between *Adam-Mellang* and *Rogers Group* (and they are so factually dissimilar that

7

there is no such tension), the Court should favor *Rogers Group* as being decided in 2010;[3] whereas *Adam-Mellang* was decided in 1996.

*Third*, Defendants gloss over the severe and substantial changes in the decibel and notice requirements from the July Ordinance to the October Ordinance—which make compliance impossible. Defendants claim to be unaware of how the October Ordinance is "impossible" to comply with. But that purported ignorance is belied both by the submissions made by Jones Digital in compliance with the July Ordinance and the specific and multi-faceted legal advice given to the Defendants as pleaded in Jones Digital's complaint.

Jones Digital's complaint alleges, "the general ambient sound level around the facility routinely exceeds 45 dBa, including sound generated from highway traffic on an adjacent Arkansas state highway, as well as airplanes based at a nearby airstrip." Dkt. No. 1, at ¶ 56. This allegation is based on the sound study performed by third-party acoustic engineer Christian Lenderman on August 16, 2023, as required under the July Ordinance, and which is attached as Exhibit 3.

Ms. Lenderman found that background sounds at the site included vehicular traffic on US Highway 165 S, soybean irrigation, insects, and birds. Ex. 3, at 5. Jones Digital submitted this study on September 25, 2023, as required under the

---

[3] As an additional note, the Eighth Circuit confirmed its holding in *Rogers Group* on subsequent appeal. *Rogers Group, Inc. v. City of Fayetteville, Ark.*, 683 F.3d 903 (2012). In that latter appeal, the Eighth Circuit affirmed an award of attorneys' fees to the plaintiff as the prevailing party under 42 U.S.C. § 1988, even though the preliminary injunction that premised the award was based on Arkansas law arising under diversity jurisdiction without addressing the claims brought under 42 U.S.C. § 1983. *Id.*, at 911 (holding takings and due process claims sufficed to trigger supplemental jurisdiction to allow fee award to plaintiff as prevailing party under 42 U.S.C. § 1988).

July Ordinance. That study showed that the average background sound, or "equivalent sound pressure level," ranged from a maximum of 67.7 dBa to a minimum of 44.7 dBa. *Id.*, at 8.

The upshot is this: due to already-existing sources of noise, Jones Digital could violate the October Ordinance's 45 dBA maximum limit[4] even without operating its facility. Therefore, compliance with a 45 dBA maximum nighttime limitation would be impossible at this site. And remarkably, the October Ordinance's reduction of the maximum nighttime limitation came weeks after Jones Digital had provided Defendants the very data showing the minimum average background sound level of 44.7 dBA.

Additionally, Jones Digital complied with the July Ordinance notice requirements and sent notice to all landowners within the one-half mile radius of the site. However, the October Ordinance calls for further *impossible* notice requirements. One of Defendants' own legal advisors, Jason Carter, noted that the hunter-notification provision "seems unreasonable because there is no method to identify them." Dkt. No. 2, at 11. Adding to the previously mentioned requirements, the October Ordinance now requires that a data center give notice to "*all hunters that utilize* area for hunting in a ten (10) mile radius, and all waterfowl hunting clubs that operate as a for profit business in a twenty (20) mile radius." Dkt. No. 1, at 43 (emphasis added). As pointed out by Mr. Carter, there is no way to identify *all*

---

[4] As Jones Digital will demonstrate through testimony at the hearing of November 16, 2023, the 45 dBA decibel limitation is facially unreasonable, akin to the ambient noise of a library.

*hunters* that "utilize" this area for hunting. Finally, the twenty miles radius from Jones Digital's site encompasses lands that are not even within Arkansas County and are therefore outside its jurisdiction.

3)   *Fed. R. Civ. P. 65(a) requires showing of "irreparable harm," not "immediate and irreparable harm."*

Defendants' arguments are premised on the purported lack of immediacy of the irreparable injury. But those arguments are not grounded in either the text of Fed. R. Civ. P. 65(a) or caselaw. Although the rule pertaining to temporary restraining orders requires an affidavit or verified complaint alleging that "immediate and irreparable" injury, loss, or damage will result to the movant unless relief is granted, *see* Fed. R. Civ. P 65(b)(1)(A), the rule governing preliminary injunctions does not contain a reference to the immediacy of the injury to the movant, *see* Fed. R. Civ. P. 65(a). Nor does the Eighth Circuit's leading decision setting forth the required showing for a preliminary injunction refer to the immediacy of harm to the movant. *See Dataphase*, 640 F.2d at 114 (setting forth factors to be considered upon request for preliminary injunction).

Thus, even if the temporal nature of the anticipated harm is a consideration for the grant of a preliminary injunction, then it is important to remember that "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Accordingly, the movant "need only demonstrate that absent a preliminary injunction, [it is] likely to suffer irreparable harm before a decision on the merits can be rendered." *Newland v. Sebelius*, 881

10

F.Supp.2d 1287, 1294 (D. Colo. 2012) (considering likelihood of harm before trial rather than "immediate" harm).[5] In any case, the fact that operations can commence as soon as Friday resolves the question conclusively.

**B.    Jones Digital is substantially likely to prevail on the merits.**

*1)    Act 851 of 2023, among other statutes, clearly applies to and voids the October Ordinance.*

"[W]ords to be used in a statute are to be given their ordinary meaning in the absence of persuasive reasons to the contrary." *Burns v. Alcala*, 420 U.S. 575, 581-82 (1975). This principle is a "fundamental canon of statutory construction." *Perrin v. United States*, 444 U.S. 37, 42 (1979). Sometimes legislative purpose can be less than clear. Not so here. The General Assembly spelled out the purpose of Act 851 by the ordinary meaning of its plain text:

> Through the enactment of this subchapter, ***the General Assembly intends*** to: (1) recognize that data centers create jobs, pay taxes, and provide general economic value to local communities and this state; and (2) clarify the guidelines needed ***to protect data asset miners from discriminatory industry specific regulations and taxes***.

Ark. Code Ann. § 14-1-602(b) (emphasis added).

The express purpose of Act 851 is to prevent local governments like Arkansas County, Arkansas from adopting or enforcing measures to discriminate against data centers and digital asset mining businesses like Jones Digital. *See* Ark. Code Ann. § 14-1-605. Defendants do not dispute that the October Ordinance's purpose is to

---

[5] Jones Digital notes that the Court set this matter for "a preliminary injunction hearing" in its text-order. Dkt. No. 7. In any case, Defendants clearly have notice of the proceedings under Fed. R. Civ. P. 65(a).

discriminate against the operation of data centers within Arkansas County. This violates the plain text of Act 851.

Ultimately, the question before the Court is whether the October Ordinance violates the terms of Act 851. As outlined in Jones Digital's verified complaint and original brief in support of this motion, it does so in numerous ways. Defendants do not dispute that Jones Digital constitutes a "digital asset mining business" as defined by Ark. Code Ann. § 14-1-603(5). As provided under Act 851, a digital asset mining business like Jones Digital "***may operate in this state***" so long as it complies with "(1) State law concerning business guidelines and tax policies; (2) any ordinance concerning operations and safety; (3) any rule or rate for utility service provided by or on behalf of a public entity; and (4) State and federal employment laws." Ark. Code Ann. § 14-1-604(a) (emphasis added).

Defendants do not contest propositions (1), (3), or (4). And as outlined by Jones Digital in its original brief, Act 851 limits "ordinance" to the context of exclusively residential uses, or "home digital asset mining," as is also statutorily defined. Ark. Code Ann. § 14-1-603(10). Because Arkansas County, Arkansas is clearly "in th[e] state" of Arkansas, Jones Digital "may operate" as a digital asset mining business pursuant to Ark. Code Ann. § 14-1-604(a), notwithstanding any contrary enactment of the Arkansas County Quorum Court.

Additionally, Defendants contend that the October Ordinance does not amount to a rezoning for purposes of Ark. Code Ann. § 14-1-605(a)(4). Section 605(a)(4) provides that "a local government shall not […] rezone an area with the

12

intent or effect of discriminating against a digital asset mining business."
Defendants appear to concede the point that both the intent and effect of the
October Ordinance is to discriminate against Jones Digital as a digital asset mining
business. After all, the October Ordinance textually applies only to "data centers,"
and not other commercial applications. Instead, Defendants assert that the October
Ordinance is not a "zoning ordinance."

Act 851 does not define "rezone" or "zoning ordinance." But it need not do so
because the ordinary meaning of "rezone" shows the October Ordinance clearly falls
within the ambit of section 605(a)(4). *See Perrin*, 444 U.S. at 42 (noting that
"ordinary meaning" is to be measured at time of enactment). *Merriam-Webster
Dictionary* defines "rezone" as (1) "to change the zoning of (an area);" (2) to
designate (a zone or zones or zones of a city, town, or borough) for a new purpose or
use through a change in the applicable zoning regulations." "Rezone," *Merriam-
Webster.com*, 2023, https://www.merriam-webster.com (13 Nov. 2023). *Black's*
defines "rezone" as "[t]o change the zoning boundaries or restrictions of (an area)."
*Black's Law Dictionary*, (11th ed. 2019). Contemporary Arkansas press accounts
employ the same ordinary meaning. *See, e.g.*, Stacy Ryburn, *Golf Course Rezoning
in Fayetteville Fails to Get Enough Votes to Pass City Council*, Arkansas Democrat-
Gazette, July 19, 2023 (13 Nov. 2023). Thus, to "rezone" is best-defined as a
governmental action to change boundaries or restrictions on permitted uses of land.
And by this definition, the October Ordinance is an attempt to "rezone" Jones

Digital's parcel with both the intent and effect of discriminating against its use as a "digital asset mining business." Ark. Code Ann. § 14-1-605(a)(4).

Battles pitting Arkansas general law against contrary county or city ordinances are hardly novel. *See, e.g.*, *English & Wilshire v. Chicot County*, 26 Ark. 454, 458 (1871) (finding that counties are political corporations and are created for specific purposes to be strictly construed). But those battles have been appropriately one-sided. *See, e.g. City of Morrilton v. Comes*, 75 Ark. 458, 87 S.W. 1024 (1905) ("[T]he Constitution denies to the Legislature the power to authorize municipal corporations to pass any laws contrary to the general laws of the state. So, the ordinance, being contrary to a general law of the state, is void.").

As recently as 2017, the Arkansas Supreme Court ruled conclusively that enactments of the Arkansas General Assembly nullify contradictory local legislation, even where that local legislation pre-exists the contrary state law. *See generally Protect Fayetteville v. City of Fayetteville*, 2017 Ark. 49, 510 S.W.3d 258. In short, the supremacy of Arkansas general law over contrary local legislation is a long-settled and elementary principle of Arkansas law.[6]

As outlined above and in Jones Digital's previous filings, there are multiple direct inconsistencies between Act 851 and the October Ordinance. Thus, the

---

[6] *See* Ark. Const. art. 12, § 4; Ark. Code Ann. § 14-14-801; *see also Horton v. Taylor*, 767 F.2d 471, 474 (8th Cir. 1985) (quorum court resolution purporting to bestow a right to a hearing held void as contrary to Arkansas Constitution); *see also Municipality of Helena-West Helena v. Weaver*, 374 Ark. 109, 286 S.W.3d 132 (2008); *Allred v. McLoud*, 343 Ark. 35, 31 S.W.3d 836 (2000) (county initiative fixing term limits struck down as local legislation in conflict with Arkansas general law); *Cox v. Commissioners of Maynard Fire Imp. Dist. No. 1*, 287 Ark. 173, 697 S.W.2d 104 (1985) ("No county is authorized to pass an ordinance contrary to the general law of the State.").

14

October Ordinance "is an obstacle to the objectives and purposes set forth in the General Assembly's Act and therefore it cannot stand." *Id.*, at 9-10.

Additionally, the October Ordinance separately violates Arkansas statute by exceeding the maximum penalty allowed to be set for violation of an ordinance issued by a quorum court. *See* Ark. Code Ann. § 14-14-906. A quorum court may impose fines for "continuous" violations only as follows: "the fine or penalty for allowing the continuance thereof, in violation of the ordinance, *shall not exceed five hundred dollars ($500) for each day that it may be unlawfully continued.*" Ark. Code Ann. § 14-14-906(a)(2)(B)(ii) (emphasis added). The October Ordinance provides, "if the act prohibited is continuous in time, the fine or penalty for allowing the continuance thereof, in violation of this Ordinance, shall be $1000 for each day that it may unlawfully continue." Dkt. No. 1, at 50. Thus, the October Ordinance directly violates Ark. Code Ann. § 14-14-906(a)(2)(B)(ii).

Finally, Defendants fail to contend in any respect with the numerous Arkansas state statutes relied on in Jones Digital's complaint. *See generally* Dkt. No. 1, at ¶¶ 76-78 (citing Ark. Code Ann. §§ 14-14-801, 14-14-805(10) and (13)). Jones Digital asks the Court to direct its attention to the fact that all of these statutes, in addition to Act 851, are contained within Title 14 of Arkansas Code, itself entitled "Local Government."

2)      *Defendants offer no authority in support of the "relation back" theory as to the October Ordinance, and such a construction plainly violates binding caselaw.*

Defendants claim that the October Ordinance "should relate back to passage of the [July Ordinance] since the two (2) documents are exact replicas with the few

15

changes noted herein." Dkt. No. 17, at 11. As an initial matter, Defendants are simply wrong to suggest the July Ordinance and October Ordinance "are exact replicas." Throughout its verified complaint, motion and brief for preliminary injunction, and the instant reply, Jones Digital has articulated numerous material changes from the July Ordinance to the October Ordinance. And Jones Digital has submitted each ordinance to the Court as exhibits to its verified complaint to allow the Court to easily verify those material differences. *See* Dkt. No. 1, at 32-52.

But Defendants' other proposition is perhaps even more troubling. Essentially, Defendants contend that this Court somehow can transmute a legislative act passed on October 10, 2023, as though it were actually enacted July 17, 2023. Defendants offer no authority for this radical and self-serving proposition. Respectfully, Defendants are thoroughly mistaken. "The law can be changed or set aside ***only by a new enactment having the same or greater quality and dignity.***" *Meyer v. Seifert*, 216 Ark. 293, 295, 225 S.W.2d 4, 6 (1949) (emphasis added). "An ordinance is amended, repealed, or suspended by an ordinance only." *Id.* As the Eighth Circuit has held, "passing an ordinance is a legislative act." *Leapheart v. Williamson*, 705 F.3d 310, 314 (8th Cir. 2013) (citing *Bogan v. Scott-Harris*, 523 U.S. 44, 118 S.Ct. 966 (1998)).

The October Ordinance is therefore a legislative act—as was the July Ordinance. There is no "relation back" as to its effective date. Rather, the effective date of the October Ordinance, by virtue of its emergency clause, was its date of enactment: October 10, 2023. Not July 17, 2023.

The intent of the October Ordinance is to change the substantive requirements of the July Ordinance by imposing new regulations that are significantly more restrictive. The October Ordinance was passed to target and disrupt Jones Digital's particular use and enjoyment of its leasehold interest. The October Ordinance is a legislative act, and Act 851 prohibits Arkansas County from enacting legislative acts like the October Ordinance. *See* Ark. Code Ann. § 14-1-605(a)(4). In sum, Act 851's "constitutional supremacy over" the October Ordinance "renders the ordinance void and therefore unenforceable." *Protect Fayetteville v. City of Fayetteville*, 2019 Ark. 30, *4, 565 S.W.3d 477, 480.[7]

3)   *Defendants had actual notice that Act 851 rendered the October Ordinance unenforceable even before its passage by the Arkansas County Quorum Court.*

Finally, Defendants' own legal counsel specifically advised Defendants not to proceed with the October Ordinance following the effective date of Act 851. Put simply, Defendants knew or should have known Act 851 prevented enforcement of the October Ordinance. Defendants concede, as they must, that before its effective date of August 1, 2023, many counties, including Arkansas County, rushed to pass ordinances purporting to regulate data mining in a scramble to enact that local legislation before Act 851's effective date.

---

[7] The logic of the Arkansas Supreme Court's decision in *Protect Fayetteville* applies with equal force to the October Ordinance as to the July Ordinance. There, as here, the Arkansas Supreme Court was faced with a local ordinance passed with the intent of becoming effective before a conflicting state statute. The Court struck down that pre-existing ordinance as in violation of the later-enacted Arkansas statute. *Protect Fayetteville*, 2017 Ark. 49, at *9-10.

Defendants were informed of Act 851's prohibitions on local ordinances prior to the passage of this October Ordinance. Mark Whitmore, Chief Legal Counsel for the Association of Arkansas Counties, informed defendant Arkansas County Judge Best on September 11, 2023, that the Arkansas County Quorum Court could not pass an ordinance or amend their existing ordinance because they were "too late." Ex. 4, Excerpts from Email Communications of September and October 2023, at 1. Whitmore continued, "y'all could have done so prior to August 1 [...] the General Assembly passed an Act which prevented a county or city from doing so after July 31st." *Id.* Whether or not Mr. Whitmore is correct about the effectiveness of other pre-August provisions, such as the July Ordinance, Exhibit 4 shows Defendants knew that the October Ordinance violated Act 851 even before its enactment.

**C.   Since being served with this action, third-parties have coordinated an enforcement action with defendant Judge Best in apparent retaliation against Jones Digital's civil action.**

Finally, Defendants "deny that there's any evidence that justifies an order restraining defendants from retaliating, as retaliation has never been mentioned or threatened in any known way." This is not correct. As detailed by the Evans Declaration, on November 7, 2023, persons acting in coordination with defendant Arkansas County Judge Best announced that they had instigated a compliance investigation by the Arkansas Department of Environmental Quality ("ADEQ") that would take place November 9, 2023.[8] One individual, Jerry Lee Bogard, stated that

---

[8] At least one member of the Arkansas County Quorum Court, Mr. Clay Carter, was present at that meeting of November 7, 2023.

the opposition group had met with Judge Best and expressly confirmed that Judge Best had "assured" him that defendants Judge Best and Sheriff Cheek would enforce anything found out of compliance. *See* Ex. 1, Evans Declaration, at ¶¶ 7-9.

As promised, at approximately 10:05 a.m. on November 9, 2023, five ADEQ employees and a larger number of non-ADEQ persons acting in coordination with defendant Judge Best, convoyed together to Jones Digital's site in Arkansas County. The non-ADEQ contingent, members of an opposition group, known as Committee to Protect Arkansas County, entered upon Jones Digital's property without right, permission, or invitation. *See id.*, at ¶ 11-12.

While the non-ADEQ crowd ultimately agreed to leave the premises, if such crowds return or, as the Evans Declaration makes clear, "if Defendants or others acting in support of them continue to instigate further 'investigations,' it will only further act to delay the facility from being operational." *Id.*, at ¶ 15.

As the Court directed in setting this matter for hearing, Jones Digital is apprising the Court of the fact of efforts by one or more of the Defendants, in coordination with numerous third-parties, to "bring an enforcement action" "against the Plaintiff before the Court has ruled on the Plaintiff's request for preliminary relief." Dkt. No. 7. And Jones Digital specifically asserts that the events of November 9, 2023 demonstrate why the Court's preliminary injunction order should expressly "restrain[] Defendants, and all their agents, instrumentalities, and employees from retaliating, directly or indirectly, against Jones Digital, and all those acting in concert with Jones Digital, for seeking redress for its grievances." Dkt. No. 1, at ¶ 95.

## III.   CONCLUSION

As a matter of plain text, the October Ordinance violates Arkansas general law. Therefore, it is unenforceable. Defendants knew it was unenforceable even at the time it was enacted. Now, Defendants claim that Act 851, which is contained within the "Local Government" Title of the Arkansas Code, somehow does not apply to local governments. And that because the October Ordinance is an "exact replica" of the July Ordinance (which it is not), somehow the Court should deem its effective date to "relate back" to nearly three months before it was enacted.

Jones Digital has shown substantial likelihood of success on the merits; the serious risk of irreparable harm; and that both the balance of the parties' interests and public interest favor a preliminary injunction against enforcement of the October Ordinance. Finally, retaliation, both official and unofficial, is regrettably both foreseeable and likely, absent the Court's exercise of its equitable powers.

For the above reasons, Jones Digital requests that the Court enjoin enforcement of the October Ordinance; that the Court specifically restrain Defendants, or anyone acting in concert with any of them, from engaging in any action in retaliation for Jones Digital's exercise of its right to seek redress for its grievances; and that the Court grant it all other just and equitable relief.

20

Stephen R. Giles (75046)
Gregory T. Jones (83097)
Alexander T. Jones (2015246)
William J. Ogles (2018108)
WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
(501) 371-0808
FAX: (501) 376-9442
E-MAIL: sgiles@wlj.com; gjones@wlj.com;
            ajones@wlj.com; wogles@wlj.com

*Attorneys for Jones Digital, LLC*

3014641-v1