Case 2:23-cv-00220-LPR   Document 26   Filed 11/20/23   Page 1 of 18

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
Nov 20, 2023
Tammy H. Downs, Clerk
By: HeatherLyversClark D.C.
          DEP CLERK

1

```
1           IN THE UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF ARKANSAS
2                     DELTA DIVISION

3   JONES DIGITAL, LLC, et al

4            Plaintiffs
                                   No. 2:23-CV-00220-LPR
5      vs.                         November 16, 2023
                                   Little Rock, Arkansas
6   ARKANSAS COUNTY, ARKANSAS,
    et al
7
             Defendants
8
9            TRANSCRIPT OF JUDGE'S RULING

10         MOTION FOR PRELIMINARY INJUNCTION

11       BEFORE THE HONORABLE LEE P. RUDOFSKY

12            UNITED STATES DISTRICT JUDGE

13  APPEARANCES:

14  On Behalf of the Plaintiffs:

15      STEPHEN GILES
        GREGORY JONES
16      ALEXANDER JONES
        WILLIAM OGLES
17      Wright, Lindsey & Jennings
        200 West Capitol Avenue, Suite 2300
18      Little Rock, Arkansas 72201

19  On Behalf of the Defendants:

20      C. BURT NEWELL
        Attorney at Law
21      Post Office Box 1620
        Hot Springs, Arkansas 71902
22

23

24      Proceedings reported by machine stenography and
    displayed in realtime; transcript prepared utilizing
25  computer-aided transcription.
26
```

Valarie D. Flora, FCRR, TX-CSR, AR-CCR
United States Court Reporter
Valarie_Flora@ared.uscourts.gov (501) 604-5105

1        THE COURT: Everybody please be seated.
2        This may be a little bit meandering, but please bear
3 with me. I want to make sure I give you all a decision
4 tonight, so I am going to do this on the bench. But I
5 don't have a script here in front of me, so, like I said,
6 just give me a little bit of the -- sort of the benefit of
7 the doubt here.
8        Before I start talking in earnest or at least in
9 substance, let me make sure I have all of the statutes and
10 ordinances in front of me so I can make sense of this, or
11 at least as much sense as possible.
12        Okay. Let me not bury the lead. I am going to
13 grant at least in very large part the motion for
14 preliminary injunctive relief. Let me explain how I get
15 there and let me explain why I say in very large part as
16 opposed to totally.
17        So number one, we all know the Dataphase factors
18 apply: Likelihood of success on the merits, irreparable
19 harm, balance of harms, and public interest. We all
20 understand that irreparable harm is sort of the
21 irreducible minimum. There must be irreparable harm if
22 I'm to grant a preliminary injunctive relief.
23 Additionally, we all know that likelihood of success on
24 the merits is often referred to as the most important
25 factor.

1    I will add here, because this is an ordinance -- and
2 I know it's not a state law, but it's an ordinance and so
3 it's a duly enacted ordinance from a local government.  I
4 am treating this as a situation where likelihood of
5 success on the merits means proving that the ordinance is
6 more likely than not unlawful, not just as there are
7 serious or substantial question.  The plaintiffs bear the
8 burden for purposes of this factor of proving that it is
9 more likely than not that the ordinance is unlawful.  As
10 I'll get to, they have done so in this case.
11    Let me start with irreparable harm.  Here, to my
12 mind, the only irreparable harm is the potential loss of
13 goodwill if operations are not allowed to start in the
14 near future.  And, quite frankly, whether we're talking
15 about next week, two weeks from now, three weeks from now,
16 four weeks from now is sort of irrelevant because all of
17 that is going to be long before a trial.  The real
18 question is, will there be irreparable harm before the
19 trial.  I believe there would be.
20    I credit Mr. Chen's testimony.  I thought it was
21 believable, credible, and honest.  I acknowledge that
22 Mr. Chen's cousin works for the company -- for the company
23 they have a contract with.  I also acknowledge that he has
24 friends at the company and that he's done work with the
25 company before.  Having said that, there are lots of

1  friends I have that I work with, and if I was not to do
2  what I'm supposed to do, they might be my friend and --
3  but this is obviously before I was on the bench -- they
4  might be my friend, but they were not going to keep coming
5  to me for business.  So the mere fact that they're friends
6  or they're relatives to me doesn't mean that there is not
7  a serious threat of the loss of goodwill.  And so I think
8  that, if operations were put off indefinitely, there is a
9  really serious chance, a likely chance that the
10 relationship that Mr. Chen -- or that the plaintiff
11 company has with the customer we've all talked about in
12 sealed session could sour and could cause significant
13 problems for Mr. Chen's business in the future.
14      I don't know if anything I just said needs to be
15 sealed.  If it does, plaintiffs, I just ask you, after I'm
16 done with all of this, to just tell me something needs to
17 be sealed and we can talk about it.
18      I think goodwill on its own here constitutes
19 irreparable harm.  The case that plaintiffs cited to me I
20 believe was Rogers, but that case -- I'm well aware that I
21 have the discretion to say that, given the circumstances,
22 goodwill alone is not enough.  I saw that part of Rogers,
23 but I think here it is enough and so I am going to
24 conclude that plaintiffs have carried their burden on the
25 irreparable harm portion of the Dataphase factors.

1           Moving on to the -- moving on to the likelihood of
2    success on the merits.  Let me -- I guess.  You know what?
3    Let me step back for a second to the irreparable harm.
4           I just want to make clear for the record I am making
5    the following factual findings which support the sort of
6    law that I just discussed with you.  Number one, I believe
7    that, currently, the plaintiff has a customer that it has
8    agreed to provide services for now or in the very near
9    future.  Number two, I believe that the customer will be
10   understanding and is understanding of a short delay.
11   Number three, I believe the customer will not be
12   understanding of a lengthy delay of the type necessary to
13   get to trial in this matter.  Number four, for reasons I
14   just discussed, I believe there would be a breakdown in
15   the relationship and it would be a loss of goodwill that
16   plaintiff could not get back -- plaintiff, being the
17   entity, could not get back if plaintiff was to have to
18   wait for trial to be able to start its operations here.
19          Okay.  Now, really moving on to likelihood of
20   success on the merits.  Number one, I think this is
21   essentially a pure question of law.  The ordinance is what
22   the ordinance is, both the October one and the July one.
23   I'll be frank, I don't think there actually is a July
24   ordinance in existence right now, but nonetheless, the
25   July ordinance was passed, the state law that we're all

1  dealing with came into effectiveness after the July
2  ordinance was passed, then the October ordinance was
3  passed.  The October ordinance is not some type of
4  retroactive amendment.  I mean, it does amend the July
5  ordinance, but it's an ordinance in and of itself.
6        Having said that, to be perfectly fair, I don't
7  think anything turns on whether or not it's an amendment
8  or an ordinance or anything like that because I don't
9  think anything turns on the timing involved here, but,
10 nonetheless, I said what I said.
11       I also don't think and so I'm not going to make
12 factual findings about -- I don't think that it's relevant
13 what the county or defendant or other defendants' lawyer
14 said about the statutes or about the ordinance.  I don't
15 think that changes things even a -- even a slight bit.
16       As to the -- and I'm not going to go through and
17 make factual findings about what the ordinance does.  As
18 I've said, the ordnance is what the ordinance is.  They
19 speak for themselves.
20       I will say on the fact of whether or not there was a
21 concession that we just heard about how the July and
22 October ordinances should be read in terms of what noise
23 level means and whether we're talking about ambient noise
24 plus the operative noise or just the operation noise
25 itself, I don't think the concession was exactly as clear

```
 1   as it could have been.  It was pretty darn clear, but I
 2   think there's a little bit of wiggle room, and so I don't
 3   think it defeats either irreparable harm or any other one
 4   of the Dataphase factors.
 5        In terms of whether or not there is express
 6   preemption here -- and by that I mean whether or not the
 7   October ordinance is expressly preempted by the -- by the
 8   state statute at issue, I am going to find that there is
 9   express preemption.  I am going to find that for two
10   separate reasons.  So number one, 14-1-604 says, a digital
11   asset mining business may operate in this state if the
12   digital asset mining business complies with:  One, state
13   law concerning business guidelines and tax policies; two,
14   any ordinance concerning operations and safety, although
15   ordinance is limited as it's in the definition section to,
16   an ordinance, resolution, or other appropriate legislative
17   enactment of a legislative body that prohibits an
18   individual from operating a business from a residence --
19   that's the important part -- or requires an individual to
20   obtain approval before operating a business from a
21   residence.  That's also the important part.  That's why
22   subsection 2 ends up not applying to this ordinance.
23   Three, any rule or rate for utility service provided by or
24   on behalf of a public entity.  And, four, state and
25   federal employment laws.
```

1       Figuring out what "may operate" means is very, very
2  difficult.  And, quite frankly, ultimately, I conclude
3  that it is ambiguous.  "May operate" could mean that, if
4  it does all four of these things -- if the business does
5  all four of these things, that that's it, and no one can
6  shut it down and no one can fine it in a way that would
7  shut it down, period, no matter what else it does.
8       That has some harsh results and maybe some absurd
9  results.  It could also -- the "may operate" language
10 could also be interpreted as, may operate but still being
11 subject to other laws and ordinances.  That has a
12 significant problem, which is, it makes the four things --
13 the four subsections superfluous.  That's problematic.
14      And so, ultimately, I think "may operate" is
15 ambiguous, but I think the ambiguity can be resolved and
16 suggestive that may operate -- strongly suggestive that
17 "may operate" has a third meaning, which is sort of
18 halfway between the first two.  And the reason it can be
19 resolved is because of the express intent provision in
20 14-1-602.  And the general -- it says -- again, this was
21 passed.  This is not just legislative history.  This was
22 actually passed and adopted into law.  The General
23 Assembly intends to, among other things, clarify the
24 guidelines needed to protect data asset miners from
25 discriminatory industry-specific regulations and taxes.

1      And so with that backdrop, that -- I guess I'll call
2 it a very long prefatory clause explaining or helping me
3 understand how to interpret "may operate," I am going to
4 interpret "may operate" as saying, if you do the four
5 things listed under (a)1, 2, 3, and 4, you as a company
6 may operate subject to generally applicable laws of either
7 the state or localities; however, you are not subject to
8 additional -- additional laws or ordinances that are and
9 have the intent to be discriminatory industry-specific
10 regulations and taxes.  So if there's an ordinance that is
11 specifically discriminating against a data mining business
12 and stopping it or chilling it from operating, that I
13 think is expressly preempted by the law.
14      I do believe that's what's going on here.  I believe
15 that the noise regulations and the other requirements in
16 the October ordinance are not generally applicable laws.
17 They are at the very least industry specific.  They are in
18 effect, if not intent, discriminatory against the industry
19 and, quite frankly, maybe just this business in the
20 industry.  But either way, I think that preempts them
21 under 14-1-604(a).
22      I also think that 14-1-605(a)(4) applies and
23 expressly preempts in an additional way this ordinance.
24 The hard part here is figuring out whether the ordinance
25 is a rezoning, but I accept plaintiffs' argument.  I think

1  it's the better of the arguments that this is a rezoning
2  and it's a rezoning with the intent or effect of
3  discriminating against a digital asset mining business.
4       Here, I think the word "rezoning" has to be taken
5  broadly given the express intent in the beginning section
6  that I read before because, otherwise, you could
7  essentially do zoning and rezoning without calling it
8  zoning and rezoning.  Here, the ordinance placed
9  requirements -- specifically the noise requirement --
10 placed requirements on a particular parcel of land or
11 particular business operation on a particular parcel of
12 land or area of land and it -- I think it both formally
13 and practically changes how you can use the property.
14      I accept the expert evidence that, if the ambient
15 sound is included -- and that may well be.  We'll see the
16 reading that somebody gives the statute -- it would be
17 impossible for plaintiffs to meet that October noise level
18 ordinance given the ambient noise that has already been
19 measured there.  So I do think it's a rezone and I think
20 it's clearly a rezone with the intent or effect of
21 discriminating against a digital asset business.
22      As far as I can tell, Arkansas County does not have
23 any noise requirements for any other business or maybe
24 even -- maybe anybody, whether it's business or
25 residential or anything, and there is only a noise

1  ordinance with respect to digital asset mining.  And so I
2  think it is discriminatory.  I don't think we have heard a
3  good reason for it.
4      You know, it would be one thing if the evidence was
5  that all digital asset mining is at 200 decibels or a 150
6  decibels, which is bigger than any other business, but I
7  don't think we've heard any of that.  So I'm not sure --
8  other than having the intent and effect of discriminating,
9  I'm not sure what the point would be.
10     For those two reasons, I think that the plaintiffs
11 have a likelihood of success on the merits on their
12 argument that the state law preempts the October
13 ordinance.
14     In terms of the balance of harms.  We heard a
15 representation from the plaintiffs that the plaintiff
16 intends to and will comply with the July ordinance whether
17 it's actually on the books or not.  Given that concession,
18 I am going to find the balance of harms factor cuts in
19 favor of the plaintiffs.  They're going to comply with
20 what the July ordinance was, quite frankly, following the
21 sort of statewide-county template.  I have not heard a
22 single person the stand suggest that that ordinance is not
23 enough or there's some actual evidence that that ordinance
24 is not enough to protect Arkansas County's interests here
25 in terms of noise generally but also protection of

1  waterfowl and migratory birds and livestock and things and
2  things of that nature.  In fact, I've heard the opposite.
3  I heard that there is no evidence that people know of that
4  the July ordinance is not enough.
5      Having said that, I want to make clear that, given
6  that this is part of my order, judicial estoppel applies.
7  And in my view, plaintiffs are estopped from not acceding
8  to and doing what the July ordinance requires.
9      In terms of the public interest factor, I think the
10 public interest -- I think the public interest factor is a
11 wash.  I think there are -- there are interests on both
12 sides here, including the people of Arkansas County have
13 an interest in their ordinance being followed.  The people
14 of the State have an interest in their law being followed.
15 And I don't think one interest outweighs the other here.
16 I think that factor, you know, comes out 50/50, maybe a
17 slight lean one or the other.  But given the preponderance
18 of the other three factors and the weight of the other
19 three factors, I don't think I need to make a very 100
20 percent definitive ruling on who wins on that one.  It's
21 basically a tie.
22      Given all of that, I am going to, as I said, grant
23 the request for a preliminary injunction.  I am going to
24 preliminarily enjoin all defendants from enforcing
25 Ordinance Number 2023-11 enacted October 10, 2023, as a

1  violation of Act 851 of 2023.
2       What I am not going to do is order anything further
3  like a restraint against retaliation or anything like
4  that.  I don't think you all have proved to me that that's
5  necessary.  Quite frankly, I think it's a side issue.  I
6  don't even know that that's really an issue in the case.
7  I don't know there's a First Amendment retaliation issue
8  or some kind of retaliation issue being complained about,
9  and so I don't know why I would order the retaliation part
10 of this.
11      I see you all have a -- I guess your B is the
12 preliminary injunction versus the temporary restraining
13 order.  I don't think we need to resolve that.  Everybody
14 is on notice.  This is a -- this is a preliminary
15 injunction.  It applies throughout the remainder of the
16 litigation.
17      Let me put you on hold for a moment.
18      Just so you all understand, the federal rules
19 require for a preliminary injunction to be effective that
20 it be in writing.  What is going to happen is, as soon as
21 the court reporter possibly can without having a heart
22 attack or not sleeping, she is going to get me the portion
23 of this hearing that has this order in it and I am going
24 to file it and it will be the written record.  I hope
25 that's going to happen tomorrow, but I can't promise

1   anyone that.  I do think it's fair to assume that it will
2   happen by Monday.
3       Plaintiffs, any request for clarification?  Anything
4   you'd like to say for the record?
5           MR. A. JONES:  For clarification, Your Honor.
6   Judicial estoppel question on the July ordinance.  To be
7   clear, that is all requirements of the July ordinance.
8           THE COURT:  Yes.  That's what I believe you
9   conceded to.
10          MR. A. JONES:  Thank you, Your Honor.
11          THE COURT:  Anything else, plaintiffs?
12          MR. A. JONES:  You know, if there is some
13  attempted enforcement, which I doubt there will be, we
14  would request the Court's leave between now and Monday
15  whenever we get the written order.  So could I reach out
16  to the court?
17          THE COURT:  If there is attempted enforcement
18  between then and now?
19          MR. A. JONES:  Yes, Your Honor.
20          THE COURT:  You can, but to be honest, there's
21  really nothing I can do about it because it has to be a
22  written order and it can't just be -- at least in my view
23  of the reading the rules, it can't just be a pro forma
24  order.  I can't just enter a paragraph.  In my view,
25  that's not what the rules require.  So I think the best I

1  can do is get it to you as soon as I can.
2          MR. A. JONES:  Thank you, Your Honor.
3          THE COURT:  Anything else?
4          MR. A. JONES:  No, Your Honor.
5          THE COURT:  Defendants, either request for
6  clarification or something you'd like to say for the
7  record?
8          MR. NEWELL:  Perhaps.  I need to speak just
9  real quickly with my client.
10         THE COURT:  Okay.
11         MR. NEWELL:  The question or concern is with --
12 with the county judge elected official, there's likely to
13 be questions of him about what -- you know, what went on
14 here.  And some of it was under seal.  So would you please
15 direct my clients on what that means?
16         THE COURT:  What under seal means?
17         MR. NEWELL:  What it means for them going back
18 to their constituents.  To me, it means --
19         THE COURT:  Anything that is -- anything that
20 is under seal cannot be talked about.  If it's talked
21 about in open session, it can be talked about.  To the
22 extent it's talked about in open session, it can be talked
23 about.  But if it is under seal, including, for example,
24 the name of the customer, if it is under seal, it may not
25 be discussed.  If it is discussed, there will be enormous,

```
 1  severe penalties.  I don't fool around with that stuff.
 2             MR. NEWELL:  Thank you.
 3             THE COURT:  Anything else?
 4             MR. NEWELL:  No, Your Honor.
 5             MR. A. JONES:  I have one more.
 6             THE COURT:  I thought you might.
 7             MR. A. JONES:  I would like to just make for
 8  the record note that we would request that the order
 9  extend as provided under 65(d)(2) to all persons
10  identified there, including under (d)(2)(C) persons in
11  active concert or participation.
12             THE COURT:  Hold on.  Now you're stretching me.
13  Hold on.
14             MR. A. JONES:  Sorry, Your Honor.
15             THE COURT:  That's okay.  I just got to get the
16  right book.  Let's see.
17             MR. OGLES:  The 2023 edition.  We're looking at
18  page 242.
19             THE COURT:  65 what?  Where are you?
20             MR. A. JONES:  Subsection (d)(2)(C), Your
21  Honor.
22             THE COURT:  (d)(2)(C).  I will say, for the
23  record, this order binds -- I made the order to the
24  defendants, but this order binds the defendants.  It also
25  binds defendants' officers, agents, service -- servants,
```

1  employees, and attorneys.  And it also binds any other
2  persons who are in active concert or participation with
3  any of those people that I've just mentioned.  So none of
4  them can enforce the ordinance.  Quite frankly, nobody can
5  enforce the October ordinance.
6       Plaintiffs, does that satisfy your request?
7            MR. A. JONES:  Yes, Your Honor.
8            THE COURT:  Anything else?
9            MR. A. JONES:  No, Your Honor.
10           THE COURT:  Okay.  Defendants, last chance.
11 Anything else?
12           MR. NEWELL:  No, thank you.
13           THE COURT:  I want to thank you all very, very
14 much for both the factual submissions and the factual
15 presentations, both in writing and orally today, as well
16 as the legal ones.  I know I had a lot of questions for
17 you all.  I know some of them were very direct.  It's just
18 part of my process.  It helps me try to figure out where
19 the strong and weak points are in everybody's argument.
20 What you all have done has been majorly helpful to me,
21 whether or not you prevailed or not.  I appreciate it very
22 much and I think you all did a great job today for your
23 client.  We are adjourned.
24      I'm sorry.  One more thing.  We are not adjourned.
25      There is no need in this situation for security or

```
 1   bond for the reasons that the plaintiffs explained in
 2   their briefing.
 3          Now we are really adjourned.
 4             (Proceedings adjourned at 7:54 p.m.)
 5                        * * * * *
 6                   REPORTER'S CERTIFICATE
 7      I, Valarie D. Flora, FCRR, RPR, certify that the foregoing
 8   is a correct transcript of proceedings in the above-entitled
 9   matter.
10         Dated this the 17th day of November, 2023.
11   /s/ Valarie D. Flora, FCRR
12   ------------------------
13   United States Court Reporter
14
15
16
17
18
19
20
21
22
23
24
25
```